## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PROCESSED EGG PRODUCTS ANTITRUST LITIGATION | : | **MULTIDISTRICT LITIGATION** |
| | : | |
| | : | **No. 08-md-2002** |
| ***THIS DOCUMENT APPLIES TO:*** | : | |
| Kraft Foods Global, Inc. v. Cal-Maine Foods, Inc. et al., | : | No. 12-cv-0088 |

PRATTER, J.                                                      SEPTEMBER 14, 2015

### MEMORANDUM

The Court approved a settlement of the direct purchaser class claims against Cal-Maine (the "Cal-Maine Settlement") in November 2014. The "Settlement Class," as defined by the Cal-Maine Settlement, included the Kraft[1] direct action plaintiffs ("DAPs"), who were at all relevant times prosecuting their own lawsuit separate and apart from the direct purchaser plaintiffs' ("DPPs'") action. On January 23, 2015, after Cal-Maine first asserted to the Kraft DAPs that the Kraft direct action lawsuit against Cal-Maine was barred by the Cal-Maine Settlement, the Kraft DAPs filed a Motion for an Order Excluding Them from the Cal-Maine/Direct Purchaser Plaintiff Settlement, or Alternatively Enlarging Their Time to Opt Out (Docket No. 1123).

Following an evidentiary hearing on July 1, 2015, the Court finds that the Kraft DAPs' failure to opt out was a result of excusable neglect. As a result, the Court will extend the deadline for the Kraft DAPs to opt out of the Cal-Maine Settlement.

### I.    FACTUAL BACKGROUND

The initial class complaints in this litigation were filed in September 2008 and were consolidated in this Court by the Judicial Panel on Multidistrict Litigation. The Kraft DAPs filed their original complaint in December 2011 in the U.S. District Court for the Northern District of

---

[1] Kraft Foods Global, Inc., General Mills, Inc., Nestlé USA, Inc., and The Kellogg Company ("Kraft").

1

Illinois, and the case was then transferred to this Court for coordinated pretrial proceedings. The

Kraft DAPs filed their Second Amended Complaint on March 6, 2013.

In August 2013, the direct purchaser plaintiffs and Cal-Maine announced that they had

reached a settlement of the direct purchaser class claims against Cal-Maine and would seek

Court approval of it. The Settlement Agreement between the DPPs and Cal-Maine states that it is

entered into by Cal-Maine and the "Direct Purchaser Plaintiffs' Class representatives." (Docket

No. 848-2, p. 1).

On October 18, 2013, two months after the Cal-Maine Settlement was announced but

before the Court granted the motion for preliminary approval, the Kraft DAPs' counsel, along

with other DAPs' counsel, engaged in a mediation session with Cal-Maine, facilitated by

mediator Eric Green. That effort was unsuccessful. Cal-Maine filed its answer on January 31,

2014,[2] and filed counterclaims against the Kraft DAPs (among others) on February 4, 2014. On

February 28, 2014, the Court preliminarily approved the Cal-Maine Settlement.[3] Also, beginning

in early 2014, the Kraft DAPs, jointly with the other DAPs, engaged in extensive deposition

discovery of defendants' officers and employees, including Cal-Maine witnesses. Although

counsel for the Kraft DAPs did not take the lead on any depositions during that timeframe, they

attended those depositions via remote means.

The Kraft DAPs received notices of the Cal-Maine Settlement in April 2014, but did not

submit a formal opt-out letter. They claim that the decision not to submit a formal opt-out letter

was based on their counsel's belief that a formal opt-out letter was unnecessary because (1) the

Kraft DAPs had filed and prosecuted their own separate action, which was treated as a separate

---

[2] The Kraft DAPs point out that Cal-Maine's answer did not include any affirmative defense of *res judicata* in connection with the Cal-Maine Settlement. However at the time of the filing of the answer, the Cal-Maine Settlement had not yet been approved.

[3] The Court ultimately dismissed Cal-Maine's counterclaims in June 2014.

action against Cal-Maine under Case Management Order 15[4]; (2) the Kraft DAPs had engaged in separate settlement negotiations with Cal-Maine after the announcement of the Cal-Maine Settlement; and (3) the Cal-Maine Settlement Notice made no reference to pending separate lawsuits, so counsel believed that its *res judicata* effect was limited to claims that were made or could have been made in the DPP class lawsuit, not claims in any of the direct action lawsuits.

On January 14, 2015, Cal-Maine's counsel sent a letter to the Kraft DAPs' counsel, stating that the Kraft DAPs' lawsuit against Cal-Maine was barred by the Cal-Maine Settlement. On January 23, 2015, the Kraft DAPs filed the instant motion. After a conference in Chambers on the motion, and supplemental briefing on the issue of whether there was need for an evidentiary hearing, the Court scheduled an evidentiary hearing for July 1, 2015.[5]

## II.   DISCUSSION[6]

The Kraft DAPs make two basic arguments in support of their Motion. First, they argue that there was no need for the Kraft DAPs to opt out. Second, they argue that the failure to opt out was a result of excusable neglect. The Court will address each of these arguments in turn.

### A.   THE KRAFT DAPS' ARGUMENT THAT THERE WAS NO NEED TO OPT OUT

The Kraft DAPs first argue that they are not bound by the Cal-Maine Settlement because (1) the text of the Cal-Maine Settlement and Notice were so ambiguous as to the Cal-Maine Settlement's effect on the Kraft DAPs' pending lawsuit that it would violate due process to find

---

[4] In relevant part, Case Management Order 15 provides, "The Court intends to highlight that there is an important distinction between Direct *Action* Plaintiff cases and Direct *Purchaser* Class Plaintiff and *Indirect* Purchaser Class Plaintiff cases."

[5] In essence, the parties agreed that it was within the Court's discretion to hold an evidentiary hearing on the Motion. The Court elected to do so in light of the fact that the only evidence on bad faith and prejudice consisted of the Declaration of Richard P. Campbell, counsel for the Kraft DAPs. In order to build a more robust record to inform the Court's excusable-neglect analysis, the Court preferred to permit the parties to test each other's evidence on that issue.

[6] A district court's order excusing a late filing must be "reasonable and supported by the evidence." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001).

that it bars the pending lawsuit, and (2) the Kraft DAPs' post-settlement conduct unambiguously demonstrated their intent to opt out of the Cal-Maine Settlement, thereby serving as the functional equivalent of opting out. For the reasons that follow, the Court will reject the Kraft DAPs' arguments.

1.      Text of the Cal-Maine Settlement and Notice

The failure of a class member to opt out of a class action settlement will bar that class member from pursuing claims that were part of the settlement. *See, e.g.*, *Hansberry v. Lee*, 311 U.S. 32 (1940). The Cal-Maine Settlement defines the "Settlement Class" as "[a]ll persons and entities that purchased Shell Eggs and Egg Products in the United States directly from any Producer, including any Defendant, during the Class Period from January 1, 2000 through February 28, 2014." Pl.'s Br. Ex. 3, Docket No. 1123-5, 4. There is little question that the Kraft DAPs meet this definition, and therefore are members of the Settlement Class. The Kraft DAPs argue that the term "lawsuit," as used in the Cal-Maine Settlement, refers to the "class action lawsuit," (Pl.'s Br. Ex. 3, Docket No. 1123-5, 3), which is and has been treated as distinct from the direct action lawsuits in this MDL. But such a distinction is meritless when one considers the Notice in its entirety, especially the unequivocal inclusion of the Kraft DAPs and other DAPs within the definition of the "Settlement Class."[7]

Nevertheless, the Kraft DAPs argue that the warnings in the Cal-Maine Settlement and Notice were not clear enough for the Kraft DAPs to know that their pending lawsuit would be barred if they did not opt out of the Cal-Maine Settlement. The Kraft DAPs rely heavily on *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62 (N.D. Cal. 1976). In *McCubbrey*, the court held that a class settlement notice was insufficient as a matter of due

---

[7] The Kraft DAPs' argument is further weakened by the fact that all of the other DAPs filed opt-out letters after receiving the Notice.

process to bar the claims of parties who had pending complaints when they received the settlement notice and did not submit opt-out letters. *Id.* at 67. Citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), in which the Supreme Court explained that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *id.* at 314, the court explained that "[n]othing in the detailed, 29-page Notice would alert even a careful reader that he must satisfy the exclusion requirements or suffer the consequence of permitting his ongoing litigation to evaporate." *McCubbrey*, 71 F.R.D. at 67.

The Kraft DAPs claim that the Cal-Maine Settlement Notice is similarly deficient because it does not expressly say that the Cal-Maine Settlement will bar all pending lawsuits involving claims that are or could be part of the class action. Thus, emphasize the Kraft DAPs, under *McCubbrey*, a court may "[allow] parties to opt out when they had lawsuits pending that were filed before the notice period began and the class action settlement notice was defective, in that it did not warn those parties with pending lawsuits that the pendency of those suits was not enough to signal an intention to opt out." *In re Imprelis Herbicide Mktg., Sales Practices & Prod. Liab. Litig.*, No. 11-MD-02884, 2014 WL 6901120, at *7 n. 5 (E.D. Pa. Dec. 5, 2014) ("*Imprelis I*").

The Court finds that the Notice in this case satisfied due process. First, as explained above, the Kraft DAPs clearly fall within the scope of the "Settlement Class" as defined in the Cal-Maine Settlement and Notice. The Notice then expressly states, "If you do nothing, you will remain a member of both the Cal-Maine Settlement Class and the Sparboe Settlement Class as

amended." Pl.'s Br. Ex. 3, Docket No. 1123-5, 9.[8] Thus, the Kraft DAPs cannot argue that they

lacked sufficient notice that they could be considered members of the Settlement Class subject to

the Cal-Maine Settlement. The fact that Case Management Order 15, as well as numerous filings

throughout this case, have distinguished between the DAPs and the DPPs is not enough to find

that the clear and unambiguous language of the Cal-Maine Settlement and Notice was

insufficient to put the Kraft DAPs on notice that they were members of the Settlement to be

bound by the terms of the Cal-Maine Settlement.

Second, with respect to the *effect* of remaining a member of the Settlement Class, the

Cal-Maine Settlement and Notice included numerous statements that "would alert . . . a careful

reader" that he or she must opt out in order to continue prosecuting a pending lawsuit otherwise

within the scope of the Cal-Maine Settlement. Such statements include: (1) "If you fall within the

definition of the 'Settlement Class' as defined herein, you will be bound by the settlement unless

you expressly exclude yourself in writing pursuant to the instructions below"; (2) By taking no

action, "[y]ou will receive the non-monetary benefits of the Cal-Maine Settlement and give up

the right to sue Cal-Maine with respect to the claims asserted in this case"; (3) "By remaining

part of the Cal-Maine Settlement, if approved, you will give up any claims against Cal-Maine

relating to the claims made or which could have been made in this lawsuit"; (4) Opting out "is

the only option that allows you to ever be a part of any other lawsuit with respect to the claims

asserted in this case"; and (5) **"Pursuant to the terms of the Cal-Maine Settlement, Plaintiffs**

**will release Cal-Maine from all pending claims."** Pl.'s Br. Ex. 3, Docket No. 1123-5, 2, 5-6

---

[8] Cal-Maine also points to the fact that the Kraft DAPs opted out of the Sparboe
Settlement and filed a claim form in the Moark Settlement (another earlier partial settlement in
this litigation), which defined the covered settlement classes in the same way as the Cal-Maine
Settlement. However, that fact is of limited relevance because both the Sparboe and Moark
Settlements occurred *before* the Kraft DAPs filed their separate lawsuit. Thus, the question of
whether those settlements barred the Kraft DAPs' pending lawsuits had not yet arisen.

(emphasis added). Like the language from the notice in *McCubbrey*, much of this language

"suggests that inaction will result in barring *future* litigation, not automatic termination of

present suits." 71 F.R.D. at 67-68. However, the Notice in this case warns potential class

members that participation in the Cal-Maine Settlement "will release Cal-Maine *from all pending*

*claims*."[9]

While the Cal-Maine Settlement and Notice could have more clearly described the Cal-

Maine Settlement's effect on pending direct action lawsuits, that is not enough to demonstrate a

due process violation if the Kraft DAPs are held bound by the Cal-Maine Settlement. The fact

that the Notice did not specifically define "any other lawsuit" to include the DAPs' pending

lawsuits, or specifically define "Plaintiffs" to include the DAPs with separate pending lawsuits,

will not render the Notice defective as to the Kraft DAPs. The language of the Cal-Maine

Settlement and Notice was sufficient to put the Kraft DAPs on notice that failure to opt out might

result in pending claims being barred.

2.      Post-Settlement Conduct

Where a party fails to file an opt-out form, "[t]he law requires a 'reasonable indication' of

a party's intent to opt-out for an opt-out to be proper. In determining whether a party has given a

reasonable indication of its intent to opt out, courts use considerable flexibility." *In re*

*Linerboard Antitrust Litig.*, 223 F.R.D. 357, 366 (E.D. Pa. 2004); *see also Plummer v. Chem.*

*Bank*, 668 F.2d 654, 657 n.2 (2d Cir. 1982) ("Any reasonable indication of a desire to get out

should suffice."); *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288 (10th Cir. 1974);

*McCubbrey*, 71 F.R.D. at 70-71 ("[N]o reasonable person could view their conduct as expressing

a desire to participate in the proposed settlement.").

---

[9] Every other DAP opted out of the Cal-Maine Settlement, suggesting that they
understood from the Cal-Maine Settlement and Notice that the Cal-Maine Settlement would bar
their pending lawsuits.

7

In order for a party to give a "reasonable indication" of its intent to opt out, the party must perform some action that is unambiguously inconsistent with an intention to participate in the settlement. For example, in *Imprelis I*, a party argued that it had opted out of a class action settlement when it sent a letter to the defendant stating that "[a]fter consulting with an attorney, our preference is not to take any legal action against Dupont [sic] or [the lawn care company], not to join in any class action lawsuit, and to resolve this as quickly as possible." 2014 WL 6901120 at *3. The court held that the letter was insufficient to constitute the functional equivalent of submitting an opt-out form because it evinced intentions that "were far from clear," as the statement "could be read simply as a desire not to get involved with the legal system, especially since Mr. Greener said in the same sentence that he did not wish to take legal action against DuPont." *Id.* at *7.[10] In contrast to *Imprelis I*, courts have found that unequivocal opt-out letters sent to the wrong address or filing new lawsuits during the opt-out period are generally sufficient to opt out. *See In re Brand Name Prescription Drugs Antitrust Litig.*, 171 F.R.D. 213, 216 (N.D. Ill. 1997); *McCubbrey*, 71 F.R.D. at 69.

The Court finds that the Kraft DAPs' post-settlement conduct did not unambiguously indicate that they intended to opt out of the Cal-Maine Settlement. None of the Kraft DAPs' post-settlement actions foreclosed the possibility that the Kraft DAPs would elect to participate in the Cal-Maine Settlement. As Cal-Maine correctly observes, the Kraft DAPs could have been "hedging their bets" by "continuing to see how the separate case would develop as the pleadings were closed and the parties moved forward through discovery, yet retaining the strategic ability to either remain in or 'opt-out' of the Cal-Maine settlement class up until the deadline." Def.'s Post-Hr'g Br., Docket No. 1255, 22 (emphasis omitted). For example, by going to mediation

---

[10] Although the court did not apply the "reasonable indication" standard in that case, one can read *Imprelis I* to fit into that framework (i.e., the letter was so unclear that it failed to provide a "reasonable indication" of the party's intent to opt out).

after the announcement of the Cal-Maine Settlement, the Kraft DAPs may have been exploring the possibility of entering into a more favorable direct settlement with Cal-Maine instead of participating in the Cal-Maine Settlement, while at the same time keeping open their ability to join the Cal-Maine Settlement. Similarly, the fact that Cal-Maine filed a counterclaim against the Kraft DAPs after the Cal-Maine Settlement was announced but before the opt-out period ended, suggests only that Cal-Maine was not confident that the Kraft DAPs would participate in the Cal-Maine Settlement. It is by no means an admission that the Kraft DAPs were clearly *not* going to participate in the Cal-Maine Settlement.

Even though the Kraft DAPs "engaged in separate, direct, and unsuccessful efforts to settle with Cal-Maine only two months after the DPP/Cal-Maine settlement was announced . . . and vigorously litigated their claims against Cal-Maine and the other defendants during the 16 months after the DPP/Cal-Maine settlement was announced," (Pl.'s Br., Docket No. 1123-1, 9), the Court finds that the Kraft DAPs took no action that reasonably indicated their intent to opt out of the Cal-Maine Settlement. The Kraft DAPs' conduct is consistent with the possibility that they were trying to test the viability of litigating their pending lawsuit while preserving the option of joining the Cal-Maine Settlement.[11] Therefore, the Court finds that the Kraft DAPs' post-settlement conduct was not the functional equivalent of opting out, so the Court will not grant the Kraft DAPs' motion on those grounds.

---

[11] This case is distinguishable from *McCubbrey*, in which the court found that the filing of a new lawsuit during the opt-out period was sufficient to demonstrate intent to opt out. "[I]nstitution of litigation, with its concomitant personal service of a complaint on a responsible officer of a corporation, constitutes an effective—indeed, strident—expression of a desire not to acquiesce in an impending class settlement." *McCubbrey*, 71 F.R.D. at 71. In contrast, prosecuting an already pending lawsuit during an opt-out period is not so clearly a rejection of the settlement, as preexisting case deadlines and other obligations to which the prospective opt-out plaintiff must respond may arise by virtue of having already filed suit, and the act of responding to those obligations does not constitute so meaningful a rejection as does initiating new litigation.

9

### B.   EXCUSABLE NEGLECT

In the alternative, the Kraft DAPs move for leave to opt out under Rules 6(b) and 60(b)(1). Rule 6(b) states that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Similarly, Rule 60(b)(1) provides that "on motion and just terms, the court may relieve a party . . . from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." The Kraft DAPs claim that their failure to opt out was a result of excusable neglect.[12]

"The determination of whether a party's failure to meet a given deadline is excusable 'is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *In re Imprelis Herbicide Mktg., Sales Practices & Prods. Liab. Litig.*, No. 11-MD-2284, 2014 WL 348593, at *3 (E.D. Pa. Oct. 23, 2009) ("*Imprelis II*") (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). The Supreme Court articulated four factors in *Pioneer* for determining whether a party's neglect is excusable: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith. *See Orthopedic Bone Screw*, 246 F.3d at 322-23. For the reasons that follow, the Court will grant the Kraft DAPs' motion because three of the four *Pioneer* factors weigh in favor of finding excusable neglect.

#### 1.   Danger of Prejudice to the Non-Movant

Under *Pioneer*, "prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence." *In re O'Brien Envt'l Energy, Inc.*, 188 F.3d

---

[12] Separate and apart from the issue of excusable neglect, "[i]n class actions, courts have equitable powers to manage the litigation in order to promote judicial economy and fairness to litigants." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3d Cir. 2003).

116, 127 (3d Cir. 1999). Cal-Maine argues that it will suffer prejudice in the form of having to defend against the Kraft DAPs' claims on the merits, and has presented no evidence of any other prejudice that may result.[13] But if Cal-Maine were to avoid defending the lawsuit filed by the Kraft DAPs because the Kraft DAPs mistakenly failed to opt out, Cal-Maine would actually be enjoying an undeserved windfall because, were it not for the mistake, Cal-Maine would have had to litigate against the Kraft DAPs. In the context of excusable neglect, when the claimed prejudice is, in reality, the loss of a windfall rather than an affirmative injury to the non-movant, there is no real prejudice to the non-movant. *Id.* at 128. As a result, to find prejudice, courts typically require more than the fact that the defendant will face an additional lawsuit. Examples of more substantial bases for finding prejudice include "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment." *O'Brien*, 188 F.3d at 127; *see Pratt v. Philbrook*, 109 F.3d 18, 22 (1st Cir. 1997) ("Of course, it is always prejudicial for a party to have a case reopened after it has been closed advantageously by an opponent's default. But we do not think that is the sense in which the term 'prejudice' is used in Pioneer"). None of those more substantial bases are present in this case. (The Cal-Maine assertion of prejudice arising from delay is addressed *infra* in sub-part 2 of this Discussion of Excusable Neglect).

Cal-Maine relies on *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 92 F. App'x 890 (3d Cir. 2004) and *Imprelis II* to argue that a single additional lawsuit constitutes prejudice under the first *Pioneer* factor. In particular, Cal-Maine argues that those courts cited the possibility of "significantly greater damages" and the cost "of continued litigation against an additional party" as grounds for finding prejudice. But in those

---

[13] Cal-Maine also argues that allowing the relief will "invite a flood of excusable neglect motions." However, the Kraft DAPs are the only DAPs that did not opt out by the deadline. Thus, there is no risk that another DAP facing similar circumstances will opt out.

cases, the settlements had special provisions that permitted the defendants to terminate the

settlements based on the number of opt-outs, so even a single additional opt-out would impair the

bargained-for value of the settlements. In *In re Diet Drugs*, the court found prejudice in the fact

that other plaintiffs might opt out because the situation of the party seeking leave to opt out late

was "neither unique nor compelling." 92 F. App'x at 894. Similarly, in *Imprelis II*, the court

found prejudice based on several factors including "the potential for future requests from

similarly situated class members" and the chance that the defendant might lose its "bargained-for

certainty." 2014 WL 348593 at *4. Consequently, because there was no indication that the

defendants in those cases were in positions to unwind their respective settlements in response to

the untimely opt-outs, permitting late opt-outs threatened to impair the value of those bargained-

for terms in the overall settlement agreements. In other words, the defendants would be at risk of

being bound by a settlement with a less-than-satisfactory number of plaintiffs if the plaintiffs

were permitted to opt out after defendants declined to exercise their right to terminate the

settlement. That situation created a risk that the defendants would have to defend many

additional lawsuits and would lose the valuable bargain they had struck in the settlement

agreements. Here, in contrast, whether or not the Kraft DAPs opt out will have no bearing on

Cal-Maine's right to terminate the settlement, because the settlement is contingent upon how

many eggs were purchased from Cal-Maine by parties who opted out, and the Kraft DAPs admit

that they purchased no eggs from Cal-Maine. Therefore, if the Kraft DAPs are permitted to opt

out, no essential term of the Cal-Maine Settlement would have its value impaired.[14] As a result,

this factor does not impede a finding of excusable neglect.

---

[14] Both parties also briefed the issue of whether the Kraft DAPs would be prejudiced if
they are not excluded from the Cal-Maine Settlement. The Kraft DAPs claim that they will suffer
the prejudice of (1) recovering only a small fraction of their estimated damages, and (2) being
barred from pursuing their claims against a defendant who is jointly and severally liable for the

2.      Length of Delay and Potential Effect on Proceedings

Cal-Maine argues that the Kraft DAPs' delay in opting-out has unduly prejudiced Cal-Maine in this litigation, but Cal-Maine never articulates *how* it has been prejudiced by the delay. Instead, Cal-Maine admits that "the length of the delay is not likely to significantly impact the overall litigation. . . ." Def.'s Br., Docket No. 1133, 23. Cal-Maine comes close to articulating an alleged form of prejudice when it asserts that it "has been forced to divert substantial resources away from its work preparing for the IPP class certification hearing on April 20-21, 2015 and ongoing merits expert discovery involving complex econometric work with a number of experts whose reports are due on March 13 to respond to the Kraft Plaintiffs' Motion." *Id.* This is not the type of effect on proceedings about which the *Pioneer* court was concerned, especially in light of the fact that there is presently no evidence that the Kraft DAPs delayed in bad-faith or for tactical reasons. Although the Kraft DAPs waited until January 2015 to file their motion (despite having access to the opt-out list prior to the final approval of the settlement back in August 2014), which could be enough time to prejudice a defendant under appropriate circumstances, the litigation between the Kraft DAPs and Cal-Maine has continued without any significant interruption. Therefore, this factor weighs in favor of finding excusable neglect.

3.      Reason for the Delay

In *Pioneer*, the Supreme Court explained, "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." 507 U.S. at 392. Indeed,

---

damages that the Kraft DAPs incurred. Cal-Maine argues that the Kraft DAPs will still have "adequate remedies" against other defendants and will make a recovery as a member of the settlement class. Although this may factor into the equation if the Court considers the totality of the circumstances, it is not a part of the *Pioneer* factors.

13

*Pioneer* declined to "erect[] a rigid barrier against late filings attributable in any degree to the movant's negligence . . . ." *Id.* at 395 n.14. The Third Circuit Court of Appeals later noted that the Supreme Court "explicitly rejected the argument that excusable neglect applies only to those situations where the failure to comply is a result of circumstances beyond the [movant]'s reasonable control." *O'Brien*, 188 F.3d at 125.

Cal-Maine argues that it was "objectively unreasonable" for the Kraft DAPs to believe that they were not required to opt out of the Cal-Maine Settlement if they wished to maintain their direct action against Cal-Maine. Cal-Maine further asserts that the Kraft DAPs' lack of diligence weighs especially against excusable neglect. *See Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988). The Kraft DAPs acknowledge that the delay was within the reasonable control of their counsel, but claim (with support in the case law) that their honest mistake should not prevent the Court from finding excusable neglect in this case. While the lack of a more thorough review of the Cal-Maine Settlement and Notice on the part of the Kraft DAPs and their counsel is troubling, perhaps even annoying, their counsel's belief that the Kraft DAPs' direct action was not affected by the settlement was not "objectively unreasonable," as Cal-Maine argues. As evidenced by his declaration and testimony at the evidentiary hearing, the Kraft DAPs' lead counsel's decision was informed by "(i) the existence of the Kraft DAP action (Campbell Decl., ¶¶ 4-6); (ii) the Case Management Orders (CMOs) that distinguished between the DAP, DPP and IPP claims for case management purposes (*id.* at ¶¶ 7-8); and (iii), the fact that the parties (along with all of the other DAPs and their counsel) had proceeded with pleadings and discovery and had attended a mediation after the announcement of the Cal-Maine/DPP Settlement in August, 2013 (*see generally id.* at ¶¶ 12-15, 18)." Def.'s Post-Hr'g. Br., Docket No. 1255, 6. The fact that Mr. Campbell testified as to further textual references at

the hearing which were not included in his declaration does nothing to affect the *objective* reasonableness of the decision. While the reason or cause for delay was within the reasonable control of the Kraft DAPs and their counsel and this factor could weigh against finding excusable neglect, it is not determinative on its own.

4.     Good Faith

Our Court of Appeals explained in *Kimberg v. Univ. of Scranton*, 411 F. App'x 473 (3d Cir. 2010), that "an honest oversight that is not part of a sinister, well-conceived plan to frustrate" the opponent will not bar a finding of excusable neglect. *Id.* at 478. Upon consideration of the evidence presented at the evidentiary hearing and the parties' post-hearing briefing, the Kraft DAPs have demonstrated that the mistake in failing to opt out was made in good faith. When examining the totality of the circumstances facing the Kraft DAPs' counsel when the decision was made that an opt-out letter was not necessary, such a decision, while ultimately wrong, was not unreasonable and was certainly not part of a "sinister, well-conceived plan to frustrate the opponent." Furthermore, the emails sent by the Kraft DAPs' counsel following the receipt of the Notice and the receipt of Cal-Maine's letter of January 14, 2015 do not give any indication of bad faith or sinister, "well-conceived" plans. Evid. Hr'g, Docket No. 1290, KDAP Exs. 8, 9, 18. On the contrary, those communications indicate confusion and surprise. While arguing that the Kraft DAPs' counsel made a mistake in performing only a cursory review of the Notice and deciding that no action was necessary, Cal-Maine fails to point out any sinister plans or strategic advantages gained by the Kraft DAPs as a result of those mistakes. As a result, and given counsel's candid admission of having been wrong, this factor weighs in favor of finding excusable neglect.

15

### III.   CONCLUSION

The Cal-Maine Settlement and Notice satisfied due process with respect to the Kraft DAPs and their pending lawsuit against Cal-Maine, and the Kraft DAPs' post-settlement conduct was not sufficient to provide a reasonable indication of their intention to opt out of the Cal-Maine Settlement. However, the Court finds that the Kraft DAPs' failure to opt out was a result of excusable neglect, and will therefore extend the period of time in which the Kraft DAPs may opt out of the Cal-Maine Settlement. Under the circumstances, the Court expects the Kraft DAPs to confirm on the record and docket their opt-out status within one week of the date hereof. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE